**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0366n.06

**No. 17-6156**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Jul 24, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| JOEL PASTERNAK, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: WHITE, DONALD, and LARSEN, Circuit Judges.

**WHITE, Circuit Judge.**

Defendant Joel Pasternak appeals his 108-month sentence, arguing that it is substantively unreasonable. The district court imposed this bottom-of-the-Guidelines sentence after Pasternak pleaded guilty to multiple counts related to an international steroid-trafficking conspiracy. Pasternak argues that the district court failed to consider his history of alcohol and drug abuse and the disparity between his sentence and the sentences imposed on his co-conspirators. We disagree and **AFFIRM**.

## I. Background

Between 2012 and 2015, Pasternak was engaged in a conspiracy to illegally import raw steroid products from China, process them into a commercially useable form, sell them over the internet, and launder almost three million dollars in proceeds through "money receivers" located throughout the United States and abroad. He was responsible for all facets of the organization,

including marketing, illegally obtaining raw materials, creating and testing the products, laundering money, and other responsibilities. Pasternak recruited at least twenty co-conspirators, many of whom he targeted because they were young college students in financial need. He also recruited his parents and siblings.

On July 7, 2015, law enforcement officers executed a search warrant at a residence in Newport, Tennessee, where Pasternak stored sales ledgers, computer equipment, and proceeds from the conspiracy. During the search, Pasternak attempted to destroy three computers and a flash drive containing evidence of the conspiracy.

Pasternak and twelve co-conspirators were indicted in October 2016. Pasternak was charged with one count of conspiracy to manufacture, distribute, and possess with intent to distribute anabolic steroids in violation of 21 U.S.C. § 841(a)(1); one count of possession of equipment, chemicals, products, and materials used to manufacture anabolic steroids in violation of 21 U.S.C. § 843(a)(6); five counts of aiding and abetting the maintaining of a place for the purpose of manufacturing, distributing, or using anabolic steroids in violation of 21 U.S.C. § 856(a)(1); and one count of conspiracy to launder money in violation of 18 U.S.C. § 1956 and to engage in monetary transactions through a financial institution in criminally derived property in violation of 18 U.S.C. § 1957.

In May 2017, Pasternak pleaded guilty to all charges without a plea agreement. The probation department prepared a Presentence Investigation Report (PSR) recommending Guidelines enhancements for Pasternak's role as an organizer or leader of the conspiracy and for obstruction of justice. The PSR also recommended granting Pasternak a three-level reduction for acceptance of responsibility. The PSR calculated a Guidelines range of 108 to 120 months.

At his sentencing hearing, Pasternak objected to the obstruction-of-justice enhancement. The court heard testimony from IRS Criminal Investigation Division Special Agent Jimmy Cline concerning Pasternak's attempts to obstruct the investigation during the search of his residence. The court found that Cline's testimony supported the obstruction enhancement and therefore adopted the PSR.

Pasternak argued that a downward departure was warranted because his Guidelines sentence was substantially higher than his co-conspirators' sentences. The district court noted that "the Sixth Circuit and other Circuits have held that the disparity that the court is concerned with in § 3553(a)(6) is nationwide disparity," rather than disparity between co-defendants, and then stated:

> 3553(a)(6) addresses my attention to unwarranted sentence disparities. That by definition means that there are certain disparities that are warranted under the Guidelines. Generally speaking, those disparities have to do with criminal history, they have to do with safety valve application, they have to do with the role in the offense, they have to do with various other enhancements under the Guidelines, they have to do with acceptance of responsibility, they have to do with motions for downward departure and the like. What I'm saying to you, Mr. Pasternak, is that there are a great number of variants that go into an individualized sentencing consideration.

(R. 460, PID 6102–03.) Pasternak focused on three co-conspirators who received lower sentences than he did: Heath Kershaw received 21 months, Thomas Hensley received 30 months, and John Allen received 18 months. But the court pointed to a number of distinctions between Pasternak and those co-conspirators. Those co-conspirators received only a two-level enhancement for being a supervisor, while Pasternak received a four-level enhancement for being a leader. All three received reductions for providing substantial assistance to the government. Those three co-conspirators—unlike Pasternak—did not receive enhancements for obstruction of justice. And some received reductions for which Pasternak was not eligible, such as for honorable service in the military.

The district court also addressed Pasternak's substance abuse, noting that Pasternak had been arrested on a DUI charge eleven days after he was released on bond. The court stated:

> [W]hen it comes to thinking about your risk of reoffending in the future, I cannot escape the fact that you committed a violation of the terms of your bond. Now, I'm not going to make any ultimate conclusion about your guilt as to that DUI but I do know that you have a very serious history of abuse of alcohol. You have drunk excessively. You have used marijuana. You have a history of powder cocaine use . . . You clearly have an alcohol problem. It's been quite obvious. In sum, Mr. Pasternak, I see no basis here for a variance.

(R. 460, PID 6111–12.)

After hearing argument and considering the § 3553(a) factors, the district court sentenced Pasternak to a low-end Guidelines sentence of 108 months in prison followed by three years of supervised release. The court also recommended that the Bureau of Prisons provide Pasternak with 500 hours of substance-abuse treatment.

## II. Discussion

On appeal, Pasternak contends that his sentence is unreasonable because (1) it fails to adequately account for his history of drug and alcohol abuse, particularly "the impact that those combinations of drugs would have on his decision-making process" and (2) it is inconsistent with the need to avoid unwarranted sentence disparities among similarly situated defendants under 18 U.S.C. § 3553(a)(6).[1] (Pasternak Br. 14–22.)

---

[1] In a single paragraph at the end of the section of his brief addressing his history of substance abuse, Pasternak asserts that his sentence should be vacated because the district court did not consider the fact that his ability to pay restitution will be hindered by his imprisonment. (Pasternak Br. 14.) Pasternak did not advance this argument before the district court and, in fact, stated in his sentencing memorandum that the need to provide restitution was "not relevant." (R. 383, PID 4748.) Pasternak articulates no argument in support of this position, and it is well established that an "issue is deemed forfeited on appeal if it is merely mentioned and not developed." *United States v. Clark*, 469 F.3d 568, 569–70 (6th Cir. 2006); *see also United States v. Layne*, 192 F.3d 556, 566-67 (6th Cir. 1999) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)). We do not address this undeveloped argument.

### A. Standard of Review

Our review is limited to determining whether the sentence imposed by the district court is procedurally and substantively reasonable. *Gall v. United States*, 552 U.S. 38, 51 (2007). We review a sentence's reasonableness for abuse of discretion. *Id.* at 41.

When considering procedural reasonableness, the court must determine whether the sentencing court committed a "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* at 51. If we determine that the sentencing court committed no significant procedural error, we must then assess substantive reasonableness by considering "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* (citing *Rita v. United States*, 551 U.S. 338, 347 (2007)). This court applies a presumption of reasonableness where a sentence falls within the Guidelines range. *United States v. Graham*, 622 F.3d 445, 464 (6th Cir. 2010).

### B. Pasternak's Sentence is Reasonable

Pasternak does not challenge the procedural reasonableness of his sentence on appeal and, instead, couches his arguments exclusively in terms of substantive reasonableness.[2] Pasternak contends that the sentencing court failed to adequately consider both his history of substance abuse and the disparity between his sentence and the sentences of his co-conspirators, and argues that it was substantively unreasonable for the court not to have downwardly departed from the Guidelines range.

---

[2] To the extent that Pasternak purports to argue that the sentencing court failed to address the § 3553(a) factors, we disagree; the sentencing court carefully and thoroughly considered all applicable factors. Thus, even if Pasternak intended to challenge the procedural reasonableness of his sentence—and it is not clear that he so intends—the district court committed no significant procedural error.

### 1. Pasternak's History of Substance Abuse

Pasternak first argues that the district court erred by assuming that the Guidelines range accounted for his history of substance abuse and failing to consider that history independently. Contrary to Pasternak's contention, however, the district court explicitly considered his history of substance abuse and determined that it did not warrant a below-Guidelines sentence. The parties dispute whether Pasternak preserved this argument by presenting it to the district court. Because Pasternak's argument fails even under the abuse-of-discretion standard applicable to properly preserved issues, we need not determine whether he in fact preserved his history-of-substance-abuse argument.

The Guidelines state that "[s]ubstance abuse is highly correlated to an increased propensity to commit crime," and therefore "ordinarily is not a reason for a downward departure." USSG § 5H1.4. Indeed, we have held that a history of substance abuse can be an aggravating factor that implicates the objectives of deterrence, protection of the public, and rehabilitation. *See*, *e.g.*, *United States v. Robinson*, 892 F.3d 209, 214–15 (6th Cir. 2018) (finding that repeated incidents of drug abuse were evidence of a "continued failure [of the defendant] to conform his conduct to the law").

In determining whether to depart from the Guidelines, the district court addressed each of the § 3553(a) factors, considered the parties' arguments, and found that Pasternak's history of substance abuse did not warrant a below-Guidelines sentence. While the court noted that Pasternak had "a very serious history of alcohol abuse," it explained that it saw "no basis here for a variance." (R. 460, PID 6111–12.) The district court's decision to weigh Pasternak's history of substance abuse in favor of a within-Guidelines sentence was well within the scope of its discretion, and Pasternak's argument to the contrary is without merit.

## 2. Sentence Disparities Between Co-Conspirators

Pasternak next argues that the disparity between his sentence and "similarly-situated" co-conspirators' sentences warrants a new sentence. (Pasternak Br. 14–17.) It is well established, however, that "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" under 18 U.S.C. § 3553(a)(6) applies only to national disparities, not to those between co-defendants, and a sentence is not substantively unreasonable merely because there are disparities between it and those imposed on co-defendants. *See United States v. Conatser*, 514 F.3d 508, 521 (6th Cir. 2008); *see also United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007) (noting that the § 3553(a) factors are "not concerned with disparities between one individual's sentence and another individual's sentence, despite the fact that the two are co-defendants") (collecting cases).

Pasternak relies primarily on *United States v. Reyes-Santiago*, in which the First Circuit considered "the unusual circumstance of a sentence that is substantively unreasonable and, hence, an abuse of discretion, because of its substantial disparity with the sentences given to co-defendants and the absence of any identified, supportable basis for the inconsistency." 804 F.3d 453, 473 (1st Cir. 2015). Reyes was involved in a very large drug conspiracy that included 110 co-conspirators. *Id*. at 456. Concluding that Reyes played a supervisory role, the court attributed to him the full "extent of the drug amounts that were handled by th[e] conspiracy," which resulted in a Guidelines range reflecting a drug quantity that was greater than the stipulated amount in Reyes's plea agreement and greater than the amount attributed to similarly situated supervisors. *Id*. at 465. As a result, the court imposed on Reyes "a longer sentence than even the conspiracy's chieftain." *Id*. at 468. Although the sentencing court had accepted the stipulated drug quantities in the plea agreements of higher-ranking co-conspirators, the court refused to accept Reyes's

stipulated amount and held him accountable for the full amount of drugs covered by the conspiracy, justifying that decision "by pointing to Reyes's high position in the conspiracy." *Id*. at 472. In reversing the sentence on appeal, the *Reyes* court reasoned that the "depiction of the drug quantity attributable to Reyes could be applied as well to the other defendants . . . yet the court's approach was markedly more lenient in other sentencings." *Id.*

Unlike in *Reyes*, Pasternak and his co-conspirators received different sentences as a result of the identified, supported differences between them. And as the sentencing court explained, sentence disparities between co-conspirators are sometimes warranted. On appeal, Pasternak attempts to demonstrate that he and his co-conspirators were equally culpable by quoting the court as having stated that certain co-conspirators "bought the raw materials, supervised the five labs, and did these things while Joel [Pasternak] ran the Internet and was in charge of marketing." (Pasternak Br. 16 (alteration in original).) This, however, is a mischaracterization of the record: the quoted statement was not made by the sentencing court, but by Pasternak's own counsel. Pasternak did not have a minimal role—he "created and directed this drug trafficking organization." (R. 460, PID 6104.) In fact, the sentencing court corrected defense counsel's misapprehension of the distinction between Pasternak's role in the conspiracy and those of his co-conspirators:

> [Pasternak's counsel]: . . . Mr. Kershaw or Mr. Hensley, who incidentally probation and parole has characterized them as being in managerial/supervisory roles, to me that's a synonym for being a leader.
>
> The Court: Well, it's not because that gets a 2-level enhancement, leader organizer gets 4. I mean, there is a distinction.
>
> [Pasternak's counsel]: Okay. I stand corrected on those two points.

(R. 460, PID 6092.)

In short, the "unusual circumstances" that were determinative in *Reyes* are absent here.

## III.  Conclusion

Pasternak has failed to demonstrate that his sentence is substantively unreasonable, and we therefore **AFFIRM**.